SANTA CRUZ RAILROAD COMPANY, Respondent, v.
THE BOARD OF SUPERVISORS OF SANTA CRUZ
COUNTY, Appellant.*

No. 6287; December 28, 1880.

County— Subsidy to Railroad Company —Supervisors— Ultra
Vires.—A subsidy, under act of the legislature, voted a railroad com-
pany by the people of a county and conditioned, by specific words
in the act, upon the construction of the company's road through the
county, may be withheld if the company, by an arrangement made
privately with the supervisors, constructs the road, not through the
county, but only part way; since in such case the supervisors are
mere agents with powers measured by the terms of the act, and by
departing from those terms, in their arrangements so made, act with-
out authority and so fail to bind the county.

APPEAL from Twentieth Judicial District, Santa Cruz
County.

J. H. Skirm and J. H. Logan for appellant; C. B. Younger
for respondent.

McKEE, J.—By an act of the legislature of the state,
passed April 4, 1870, the people of any county of the state
who proposed to aid in the construction of a railroad in their
county were authorized to vote upon the proposed aid, at an
election to be held on a day and at the places in the county
to be named in a notice of election for that purpose. The
statute required that there should be stated in the notice the
amount of bonds proposed to be issued, and a definite descrip-
tion of the route upon which the railroad was to be con-
structed; and that the notice itself should be published once
a week for at least thirty days before the election. If the
election resulted in favor of granting the proposed aid, the
board of supervisors of the county were then authorized to
enter into a contract with parties for the construction of a
railroad upon the proposed route, and to issue bonds pursuant
to the contract, bearing interest at seven per cent per annum,
payable within twenty years from the date of their issuance,

*For subsequent opinion in bank, see 62 Cal. 239.

and to provide by taxation for the payment of the interest and principal of said bonds as they became due.

By virtue of this authority, the board of supervisors of Santa Cruz county submitted to the electors of the county, at an election called for the fifth day of November, 1872, the question whether they would consent to aid, to the extent of two hundred and forty thousand dollars, in the construction of a railroad in the county, of ''not less than a three-foot gauge, and beginning at or near the Pajaro depot. on the Southern Pacific Railroad, in the county of Monterey, and running thence, in the most practicably direct route, through the county of Santa Cruz, crossing the Pajaro river near Watsonville, and crossing the San Lorenzo river between the county road leading to Soquel and the bay of Monterey, and thence along or near the coast to the boundary of said county, near the southeast corner of the Point New Year's ranch.''

A majority of the electors voting at the election cast their votes in favor of the proposed aid for the construction of such a railroad; and, on the fourth day of August, 1873, the board of supervisors of the county entered into the alleged contract with the Santa Cruz Railroad Company to carry out the wishes of the people of the county as expressed at the election. In entering into the contract the board acted as the agent of the county. By its general powers it had no contractual capacity to build, or aid in building, railroads in the county. Whatever power it had in that respect it derived solely from the statute of 1870. That statute was repealed in January, 1874. While it was an existing law it was, to say the least of it, of doubtful constitutionality, for a railroad company is nothing more than a private corporation, and it would seem to be self-evident that the legislature had no power to authorize any county in the state to raise money by taxation for the purpose of a private corporation.

Assuming, however, that it was a constitutional enactment, its repeal did not devest the plaintiff of any vested rights which may have been acquired under it while it existed as a law, nor impair the obligation of any contract which may have been entered into under its authority. If, therefore, the board of supervisors, in the exercise of the power conferred by it, contracted with the plaintiff to carry out the intention of the county, courts are bound to maintain and enforce the

contract. But it must have been made by a proper exercise of the authority, for the purpose of effectuating the object which was intended by the people and authorized by the statute.

The authority of the statute of 1870 is obvious. In the language of the statute there is no ambiguity; it is plain and unequivocal; it clearly expresses the will of the legislature. Addition or qualification to it by judicial construction is impossible, and the intention of the people of the county as expressed at the election is equally manifest. The statute contains simply a delegation of power to the board of supervisors to carry out the intention of the people, by entering into a contract for assisting, to the extent of two hundred and forty thousand dollars, parties who would engage to construct a railroad upon the route which had been voted on, and this power was to be exercised in the mode and under the conditions expressed in the statute, and for the object intended by the people and authorized by the statute.

In exercising its authority the board was bound to follow strictly the statute. Any contract which it might make with parties must be for the performance of that which the people had voted for. A contract for anything else would be without the authority of the statute and of no legal effect; for parties who enter into a contract purporting to be made by virtue of a statute which authorizes it are chargeable with notice of the statute; and if the contract is not according to the power conferred, and formally and duly exercised, and for the performance of what it authorizes, it is nudum pactum.

Now, when the board of supervisors entered into the contract under consideration, the intention of the people of the county, as it had been expressed at the election which was called for the purpose of ascertaining it, was well known to the board and the plaintiff. That intention was the proposal of the county to any party who might solicit its aid, for the construction of a railroad in the county. The plaintiff, therefore, knew the terms upon which, and the object for which, the aid of the county was obtainable. Knowing these things, it was necessary for it to consent to the terms, or, in other words, to accept the proposal of the county, before there could be any agreement between it and the county which could be formulated into a contract between them; for an agreement

originates in a proposal by one party and an acceptance of it by another.

The proposal of the county was not doubtful, or uncertain, or indefinite. It was an absolute proposal to grant its aid, to the extent proposed, to any railroad company who solicited it, for the construction of a railroad through the entire length of the county upon the route described, and for which the people had voted. Such a proposal could not be accepted conditionally or partially. If accepted at all, the acceptance must be absolute and identical with its terms. Until thus accepted there could be no agreement capable of being clothed in the legal form of a contract. And any contract into which the board was authorized to enter into should express the proposal and acceptance, or the agreement, and the promise made by each of the contracting parties; for the contract being executory, the promise made by one is the consideration for the promise made by the other. Acceptance of a proposal and a direct promise to do what may be included in the proposal are of the essence of an executory contract.

The construction of a railroad through the entire length of the county upon the route which had been submitted to the people, and which they had voted on, being the single object of any contract into which the board of supervisors had authority to enter, it was, therefore, necessary for any railroad company who solicited the aid of the county for the purpose of constructing such a road to engage to construct the same, for that was the consideration necessary to support a promise by the county to pay for, or to aid in, its construction. If no such promise was made by the plaintiff in the contract under consideration, then the promise made by the county to issue bonds to the plaintiff was not binding upon the county; for a contract which rests upon mutual promises must bind both the parties to it or it binds neither. Both the contracting parties must be bound for the performance of their future acts; for though the transaction is one, the rights and duties arising out of it are twofold and reciprocal. A promise by the county to issue bonds to a corporation to aid it in the construction of a railroad, which it does not undertake and agree to construct, is no more binding than the agreement of one who undertakes in writing to convey land to another who neither agrees to buy nor pays anything for the promise: Bean

v. Burbank, 16 Me. 458, 33 Am. Dec. 681; Burnet v. Bisco, 4 Johns. (N. Y.) 335. Both parties to a contract, resting on mutual promises, must be bound or neither is.

It is true that an instrument in writing is presumptive evidence of a consideration; but where the writing itself is made in the exercise of a power conferred by a statute, it must show on its face that it was made in pursuance of the statute, and for the performance of what it authorized; and the rights and duties of the contracting parties must be fixed by the terms of the contract. If there is in it merely a promise by one of the parties to it to pay money for, or to aid in, a work which the statute authorized to be aided or paid for, and the party to whom the promise is made does not by the contract engage to do the work, there is wanting the elements of a contract, and the presumption of a consideration disappears, and the promise to pay the money is gratuitous—a promise upon which no expectations can be based.

Now, in the alleged contract before us the plaintiff did not engage to construct a railroad upon the route which had been voted on by the people of the county. The writing simply recites that the Santa Cruz Railroad Company had organized for the purpose of constructing and maintaining a railroad upon the route; and that "It proposed to construct on said route—first the section of said railroad between a point at or near the Pajaro depot and a point to be thereafter located by the company, on the westerly side of the San Lorenzo river, and within the corporate limits of the town of Santa Cruz"; in consideration of which, and of the agreements named to be done and performed by the company, the county of Santa Cruz undertook and agreed to issue its bonds, etc.

This was a proposal on the part of the railroad company to build only a single section of the road; and it was equivalent to a rejection of the proposal of the county to construct the entire road. It was a counter-proposal by the company which the board of supervisors had no authority to accept or to enter into a contract concerning. But the contract into which they did enter was altogether upon that basis, for the only agreement by the railroad company expressed in the contract is an agreement to build a bridge "over and across the San Lorenzo river on the line of the railroad between the county road leading to Soquel and the bay of Monterey, on the westerly side

of the San Lorenzo river; and to lay the track of a railroad from the easterly bank of the San Lorenzo river to a point on the westerly side thereof within three hundred feet of the bay of Monterey, in three months after the bonds of the county to the amount of ninety thousand dollars shall have been issued and delivered.'' In no part of the contract does the company bind itself in any way to the construction of a railroad upon the entire route. It especially avoids making any promise, except to lay the track of a single section of the road.

It may be that this section was the most important part of the road, and that its construction was for the best interests of the people of the county.

The alleged contract, indeed, recites that it appeared to the board of supervisors ''that the county will be greatly benefited by the construction of such a railroad, or any part thereof''; but the people did not vote upon any part of such a road; and while it may be presumed that the county would be benefited by the construction of a railroad through the entire length of the county, because it might serve to open up the resources of the county to railroad communication, it cannot be presumed that such a result would follow from the construction of a part of the road only. But be that as it may, the people had no opportunity, because they were not called upon, to express their wishes upon that question, and we cannot undertake to determine how they would have decided it if it had been submitted to them. The fact with which we have to deal is that they did decide to aid in the construction of a railroad through the entire length of the county upon the route upon which they voted, and it was solely upon the consideration that parties would undertake and agree to construct a railroad upon that route that they authorized the board of supervisors to contract with such parties for the subsidy voted, and for the payment of which they consented to be taxed. In the absence of an agreement on the part of the plaintiff to construct such a road, in the contract under consideration, the agreement of the county to issue and deliver to it the bonds of the county is not enforceable.

We are, therefore, of opinion that the plaintiff is not entitled to a writ of mandate to compel the defendant to issue

and deliver to the plaintiff the bonds called for by the contract.

Judgment and order reversed.

I concur in the judgment: Ross, J.

I concur in the judgment on the ground that the board of supervisors had no power to make the contract entered into with plaintiff: McKinstry, J.